**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____
                                                    )
**CHERYL TOLLIVER,**                )
                                                    )
    **Plaintiff,**                        )
                                                    )
    **v.**                                      )          **CIVIL NO. 3:09CV372**
                                                    )
**MICHAEL J. ASTRUE,**           )
**Commissioner of Social Security,**   )
                                                    )
    **Defendant.**                      )
_____)


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

    This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Cheryl Tolliver, seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying her applications for Social Security Disability ("DIB") and Supplemental Security

Income ("SSI") payments.  The Commissioner's final decision is based on a finding by an

Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social

Security Act ("the Act") and applicable regulations.

    For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

_____

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil
Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth
(except for year of birth), and any financial account numbers from its consideration of Plaintiff's
arguments and will further restrict its discussion of Plaintiff's medical information to only the extent
necessary to properly analyze the case.

for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that

Defendant's motion for summary judgment (docket no. 14) be GRANTED; and that the final

decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on August 31, 2005, and DIB on August 22, 2005,

claiming disability due to arthritis, bone spurs, bursitis, asthma, allergies, frequent urination,

abdominal pain, high blood pressure, rapid weight loss, and osteoarthritis, with an alleged onset

date of June 15, 2003.  (R. at 73, 79, 91, 167.)  On appeal, Plaintiff supplemented her conditions

alleging limitations of more bone spurs, stress, anxiety, and depression, with an alleged onset

date of November 15, 2005.  (R. at 115.)  The Social Security Administration ("SSA") denied

Plaintiff's claims initially and on reconsideration.[2]  (R. at 73-75; 69-71.)  On December 5, 2007,

accompanied by counsel, Plaintiff testified before an ALJ.  (R. at 28-53.)  On December 18,

2007, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act

where Plaintiff retained the residual functional capacity "to perform her past relevant work,

either as actually performed or as generally performed in the national economy."  (R. at 15-23.)

The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at

3-5.)

## II. QUESTION PRESENTED

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by

substantial evidence on the record and the application of the correct legal standard?

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

determining whether the Commissioner's decision was supported by substantial evidence on the

record and whether the proper legal standards were applied in evaluating the evidence.  Johnson

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of

relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401

(1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the

record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the

Commissioner based on the record as a whole, the Court must "'take into account whatever in

the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th

Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The

Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are

conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has

made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d

514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d),

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to her past relevant work[4] based on an assessment of the claimant's residual functional

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

past."  20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will

not be awarded.  Id.  However, if the claimant cannot perform her past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called

to testify, the ALJ's function is to pose hypothetical questions that accurately represent the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id.  (footnote omitted).

claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability.  (R. at 17, 80.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of bone spurs, arthritis, degenerative changes in the right acromioclavicular joint with tendinosis and probable tear, and asthma, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 17-19.)  The ALJ next determined that Plaintiff had the RFC to perform light work, but that she could only occasionally climb, stoop, kneel, crouch, crawl, and work overhead with her right upper extremity.  (R. at 19.)  Additionally, the ALJ found that Plaintiff could  "use her right hand for gross manipulation but only occasionally for fine manipulation."  (Id.)  Finally, the ALJ noted that Plaintiff needed only to "avoid concentrated exposure to pulmonary irritants such as fumes, odors, and dusts."  (Id.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a security monitor because such work does not require activities precluded by Plaintiff's RFC.  (R. at 22.)  Because the ALJ determined that Plaintiff was capable of

performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); <u>Powers v. Apfel</u>, 207 F.3d 431, 436 (7th Cir. 2000) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987)); <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 22-23.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. Summ. J.) In support of her position, Plaintiff argues that the ALJ: (1) failed to adjudicate Plaintiff's claim according to Listing 3.02C; (2) failed to consider all of Plaintiff's alleged impairments; and (3) erred in finding that Plaintiff could perform her past relevant work. (Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 3-7.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. Summ. J. & Br. Supp. Thereof ("Def.'s Mem.") at 9-21.)

**A.      Plaintiff contends that the ALJ failed to consider whether Plaintiff was disabled pursuant to Listing 3.02C.[6]**

Plaintiff contends that the ALJ failed to address Listing 3.02C (the listing for chronic pulmonary insufficiency). (Pl.'s Mem. at 3-4.) Plaintiff argues that her pulmonary function test

---

[6] While the ALJ did not address the issue, it is nevertheless appropriate for this Court to do so in order to have a complete record. The issue has been raised by Plaintiff, but must be resolved against her, and therefore cannot form the basis for reversal or remand in any event.

is objective and satisfies Listing 3.02C such that the ALJ's decision to deny benefits cannot be supported by substantial evidence where the ALJ failed to consider a relevant listing. (Id.)

In order for a claimant's condition to meet a listing, it must be established that the claimant meets all of the listing's criteria. Headin v. Barnhart, 2005 U.S. Dist. LEXIS 11002, at *7 (E.D. Va. June 7, 2005). To meet or equal Listing 3.02C, the evidence must demonstrate that a "[s]ingle breath DLCO ... [is] less than 10.5/ml/mm Hg or less than 40 percent of the predicted normal value." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02C (emphasis added). "The DLCO value used for adjudication should represent the mean of at least two acceptable measurements...." Id. § 3.00(F)(1) (emphasis added).

Although the ALJ did not expressly state that Plaintiff was not disabled pursuant to Listing 3.02C, there is substantial evidence to support a finding that Plaintiff was not disabled as dictated by said Listing. Plaintiff's pulmonary function results form includes one measurement of a DLCO breath less than 10.5/ml/mm and less than 40 percent of the predicted normal value. (R. at 324.) However, there is nothing in the medical records identifying that such values were a mean or that at least two acceptable measurements were taken. (R. at 322-24.) Plaintiff emphasizes that her pulmonary function results form was submitted after the State Agency medical consultants reviewed the medical evidence. (R. at 69, 322-24.) However, the ALJ noted that the State Agency medical consultants' conclusions were not given controlling weight anyway because the consultants did not have the opportunity to consider the additional evidence. (R. at 22.) Therefore, the ALJ's decision that Plaintiff's condition did not equal the Listing is supported by substantial evidence.

> **B.    Plaintiff contends that the ALJ failed to consider all of her alleged impairments.**

8

**1.      Plaintiff contends that the ALJ failed to consider her claim of obesity.**

Plaintiff contends that the ALJ did not consider her condition of obesity.  (Pl.'s Mem. at 4.)  However, Plaintiff never alleged that such an impairment was the cause or an aggravation of her alleged disability.

An ALJ has the duty to develop a record and to consider a claimant's medical history and alleged sources of impairment; however, the ALJ is not required to assume or surmise that a circumstance or condition exists without the plaintiff first alleging that the condition or impairment is a source or cause of an alleged disability.  To determine otherwise would require an ALJ to consider every detail of a claimant's medical record without a particular issue being raised, and draw conclusions about potential impairments that may not be relevant to the pending disability claim.  Such an analysis would overly burden the ALJ and render the system ineffective.  While the ALJ has an affirmative duty to inquire into a plaintiff's condition and impairments, it is the claimant's responsibility to at least indicate which impairments allegedly caused or contributed to an alleged disability.

Plaintiff's disability reports indicate that she suffered from abdominal pain, high blood pressure, rapid weight <u>loss</u>, asthma, allergies, osteoarthritis, bone spurs, stress, anxiety, depression, bursitis, and frequent urination.  (R. at 73, 110, 167.)  Furthermore, Plaintiff failed to raise her weight as a factor during the hearing before the ALJ, in which both she and her counsel were given more than sufficient opportunity to supplement the record.  (<u>See</u> R. at 46-52.)

Plaintiff further argues that the ALJ failed to give appropriate consideration to the circumstances of Plaintiff's obesity.  (Pl.'s Mem. at 4.)  Specifically, Plaintiff contends that pursuant to SSR 02-1p, obesity can be a medically determinable impairment, and in combination with other conditions, can be considered disabling.  (<u>Id.</u>)  The "combined effects of obesity with

other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Id.

A review of the record reveals that two medical reports regarding Plaintiff contained diagnoses of obesity. (R. at 356, 399.) The ALJ gave significant weight to Dr. Powell's opinion that diagnosed Plaintiff with obesity, yet the ALJ still held that Plaintiff could perform "medium" work. (R. at 21, 396-400.) The ALJ notes that after careful consideration of the entire record, he found Plaintiff to have severe impairments; that Plaintiff did not have an impairment or combination of impairments that medically equaled a listing; and that Plaintiff had the RFC to perform light work. (R. at 17-22.) Accordingly, there is no indication that the ALJ incorrectly assessed Plaintiff's reported obesity as required by SSR 02-1p.

## 2. Plaintiff contends that the ALJ failed to consider her right hand impairment.

Plaintiff also contends that the ALJ failed to consider her right hand impairment because the ALJ failed to note whether Plaintiff's right hand impairment was severe or not. (Pl.'s Mem. at 4.) Plaintiff correctly points out that the ALJ does not explicitly state whether Plaintiff's right hand impairment is severe, or at least, he did not do so in the decisional paragraph. (R. at 17.) However, there is substantial evidence to support the conclusion that the ALJ considered Plaintiff's right hand impairment. The ALJ held Plaintiff to have the severe impairment of arthritis, further elaborating that Plaintiff's mild degenerative changes in the right fifth DIP joint are a severe impairment. (R. at 17-18, 356, 367.) The right fifth DIP joint is a joint in the hand. The ALJ based his determination on medical evidence and testimony. For example, the ALJ specifically asked Plaintiff, "what's going on with your hands...?" (R. at 40.) He noted in his

opinion as a result that Plaintiff testified to having arthritis and pain in her right thumb, swollen

joints, and that although she has a cane, she cannot use it because of her hands.  (R. at 20, 37-38,

40, 43, 46-48.)  The ALJ nevertheless found, based on medical evidence in the record, that

Plaintiff had full grip in both hands, and that despite Plaintiff's arthritis and bone spurs, Plaintiff

had no manipulative limitations.  (R. at 21, 353, 356, 399.)  The ALJ accordingly concluded that

Plaintiff can lift and carry up to twenty pounds occasionally and ten pounds frequently, but that

she had some limitations in the ability to use her right upper extremity for fine manipulation.  (R.

at 21.)

Furthermore, at step three in the analysis, the ALJ determined that Plaintiff's

musculoskeletal impairments did not meet or medically equal a listing under 20 C.F.R. Part 404,

Subpart P, Appendix 1.[7]  (R. at 19.)  The evidence in support of the ALJ's finding includes

evidence that Plaintiff had no limitation in using her hands for handling, fingering, or feeling,

and that she prepared meals, did housework, drove, shopped, managed her finances, wrote, and

---

[7] The ALJ referred to Listing 1.02B which is defined as, "[i]nvolvement of one major
peripheral joint in each upper extremity (i.e., shoulder, elbow, or <u>wrist-hand</u>), <u>resulting in inability
to perform fine and gross movements effectively</u>, <u>as defined in 1.00B2c</u>."  20 C.F.R. pt. 404, subpt.
P, app. 1, § 1.02 (emphasis added).  Section 1.00B2c states:

> <u>Inability to perform fine and gross movements effectively means an extreme
> loss of function of both upper extremities</u>; i.e., an impairment(s) that
> interferes very seriously with the individual's ability to independently initiate,
> sustain, or complete activities.  To use their upper extremities effectively,
> individuals must be capable of sustaining such functions as reaching,
> pushing, pulling, grasping, and fingering to be able to carry out activities of
> daily living.  Therefore, examples of inability to perform fine and gross
> movements effectively include, but are not limited to, the inability to prepare
> a simple meal and feed oneself, the inability to take care of personal hygiene,
> the inability to sort and handle papers or files, and the inability to place files
> in a file cabinet at or above waist level.

<u>Id.</u> § 1.00B2c (emphasis added).

read. (R. at 21, 142-45, 353.) The ALJ then proceeded to note at step four that, "[r]egarding her musculoskeletal impairments, treatment records reflect the claimant's subjective complaints of pain in her ... hands ... but they do not support that her pain or related symptoms are as severe or limiting as alleged." (R. at 20.) Accordingly, there is substantial evidence to support that the ALJ considered Plaintiff's right hand impairment.

Plaintiff also argues that the ALJ's decision is not clear in identifying what "occasionally" means. (Pl.'s Mem. at 5.) Plaintiff erroneously defines "occasionally" to mean two-thirds of the working day. (Id.) The medical evidence includes a definition of "occasionally" to mean "occurring from very little up to one-third of an 8-hour work day (cumulative, not continuous)." (R. at 351.) The record indicates that as a security officer, Plaintiff wrote, typed, or handled small objects one hour each day, and did not handle, grab, or grasp big objects. (R. at 158.) Accordingly, the ALJ's determination that Plaintiff could occasionally use her hands for fine manipulation is supported by substantial evidence.

### 3. Plaintiff contends that the ALJ improperly concluded that Plaintiff's mental impairment was not severe.

Plaintiff further contends that the ALJ's determination that her mental impairment was not severe is not supported by substantial evidence. (Pl.'s Mem. at 5-6.) Specifically, Plaintiff argues that the ALJ's determination is internally inconsistent and not supported by the record. (Id.)

When evaluating a claimant's alleged mental impairment, an ALJ will first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine if the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If the ALJ determines that a medically determinable mental impairment exists, then the ALJ must rate the

degree of functional limitations which results from the impairment.  See id. § 404.1520a(b)(2).

The SSA has identified four broad functional areas in which an ALJ will rate the degree of a

claimant's functional limitations, namely: (1) activities of daily living; (2) social functioning; (3)

concentration, persistence, and pace; and (4) episodes of decompensation.[8]  Id. §

404.1520a(c)(3).  In rating the first three functional areas, an ALJ utilizes a five point scale:

none, mild, moderate, marked, and extreme.  Id. § 404.1520a(c)(4).  When evaluating the fourth

functional area, the ALJ utilizes a four point scale: none, one or two, three, four or more.  Id.

After rating each degree of functional impairment, the ALJ must determine the severity of the

claimant's mental impairment by analyzing the ratings given to the various functional areas.  See

id. § 404.1520a(d).  If the ALJ rates the degree of limitation in the first three functional areas as

mild or none, and gives a rating of none in the fourth area, then the ALJ can properly conclude

that the claimant's impairments are non-severe, unless the evidence indicates that there is more

than a minimal limitation on the claimant's ability to perform basic work activities.  Id. §

404.1520a(d)(1).  In order for a mental impairment to be considered "severe," it must

significantly limit a claimant's mental ability to perform basic work activities.  Id. §§ 416.920(c),

404.1520(c).

    Here, the ALJ determined that Plaintiff's mental impairment was not severe, noting that

Plaintiff's mental impairments caused no more than minimal limitation in her ability to perform

_____

        [8] Episodes of decompensation are exacerbation or temporary increases in symptoms or signs
accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities
of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.
20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C4.  Episodes of decompensation may be demonstrated
by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less
stressful situation (or a combination of the two).  Id.  Episodes of decompensation may be inferred
from medical records showing significant alteration in medication or documentation of the need for
a more structured psychological support system.  Id.

basic mental work activities. (R. at 18.) The ALJ determined that Plaintiff's limitations in the first three functional areas were "mild," and that there was "no" limitation in the fourth functional area. (Id.) Plaintiff argues that the ALJ's findings are inconsistent pursuant to 20 C.F.R. § 404.1520a because the ALJ noted that Plaintiff did in fact experience one or two episodes. (Pl.'s Mem. at 6.)

It was not improper for the ALJ to determine that, as to Plaintiff's episodes of decompensation, a 'none' rating for the fourth function area existed based on the evidence presented. The fourth functional limitation is expressly identified on the SSA-2506-BK (9-2000) form as "repeated episodes of decompensation, each of extended duration." (R. at 344.) "The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C4. The ALJ stated that while Plaintiff "experienced one or two episodes of decompensation ... there is no evidence that they lasted for extended periods of time." (R. at 18.) Furthermore, although the non-examining psychologist selected the "one or two" degree of limitation, the report confirms that the evidence does not reveal repeated episodes of extended duration. (R. at 344-45.) The ALJ also noted that although Plaintiff was diagnosed with a depressive disorder, the medical records reflected that her symptoms were precipitated by acute situations, did not persist beyond a short time, and did not require treatment. (R. at 22, 337, 349, 362-63.) A review of the record demonstrates that Plaintiff was unable to work for a 120 day period; however, such reportedly was due to high blood pressure and asthma. (R. at 22, 232.)

Plaintiff erroneously asserts that the non-examining psychologist rejected the category of "not severe." (Pl.'s Mem. at 5.) The medical summary involved includes neither a check mark

14

in the "severe" nor the "not severe" boxes.  (R. at 334.)  The non-examining psychologist only

determined that an RFC Assessment was necessary.  (R. at 334.)  Additionally, Plaintiff also

asserts that the non-examining psychologist found that Plaintiff had four marked limitations.[9]

(R. at 347-48.)  "A marked limitation may arise when several activities or functions are impaired

... as long as the degree of limitation is such as to interfere seriously with your ability to function

independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. pt. 404, subpt. P,

app. 1, § 12.00C.  Although Plaintiff had four marked limitations, the medical summary contains

sixteen other rated categories; thus, there is substantial evidence to support the ALJ's finding

that Plaintiff's limitations in the first three functional areas were "mild."  (R. at 344, 347-48.)

Accordingly, the ALJ's determination that Plaintiff's mental impairment was non-severe is

supported by substantial evidence.

### 4. Plaintiff contends that the ALJ failed to properly consider Plaintiff's complaints of pain.

Plaintiff alternatively asserts that the ALJ failed to properly adjudicate her complaints of

pain.  (Pl.'s Mem. at 6.)  Specifically, Plaintiff contends that the ALJ failed to consider the side

effects of various medications when determining her RFC and resulting ability to work, namely

that Plaintiff is unable to take certain medications.  (Id.)  Because Plaintiff's complaints

regarding the application of medicinal side effects to her impairments are part of the ALJ's

credibility analysis of Plaintiff's overall subjective complaints, the Court reviews the ALJ's

---

[9] Plaintiff was found to be markedly limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to interact appropriately with the general public; and the ability to set realistic goals or make plans independently of others. (R. at 347-48.)

credibility analysis in its entirety, and not just the isolated issue of whether he considered the impact of Plaintiff's medication.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the

Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, Plaintiff testified she cannot work because she has to focus on trying to breathe; has arthritis and pain in her right knee, hip, shoulder, and right thumb; her joints swell; and sitting, standing, and walking make the pain worse, although she can sit from twenty to thirty minutes, stand fifteen to twenty minutes, and walk fifteen to twenty minutes. (R. at 37-39, 52.) Plaintiff also testified that she had been prescribed a cane, but was unable to use it because of the pain in her hands, and that the medications Plaintiff took made her tired. (R. at 39-40, 51.) Specifically, she testified that she had to nap two, to two and a half, hours twice a day and had problems with her short term memory. (R. at 41, 44.)

As previously noted, Plaintiff testified that she suffered side effects from certain medications. She stated that she took a lot of medications, but none for pain or swelling. (R. at

38.)  Specifically, Plaintiff testified, and the evidence supports her testimony, that she suffers

from a glucose-6-phosphate dehydrogenase ("G6PD") deficiency,[10] and is allergic to, and would

go into anaphylactic shock from, medicines, including aspirin and so-called sulfur drugs.  (R. at

38, 46, 261, 412.)  In this regard, Plaintiff testified that when taking Tylenol #3 and Ultram for

pain, as prescribed, on a scale of zero being no pain and ten being terrible pain, she was a

"constant" eight.  (R. at 38, 46.)

It is clear from the ALJ's opinion that he performed a thorough analysis of both the

subjective and objective medical evidence presented to him in making his determinations as to

Plaintiff's credibility and RFC.  The ALJ found that Plaintiff's medically determinable

impairments could reasonably be expected to produce the alleged symptoms.  (R. at 20.)

However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely credible."  (Id.)  After consideration of all

the evidence in the record, the ALJ reasoned that Plaintiff's testimony and written statements

regarding her symptoms and limitations were inconsistent with the medical evidence.  (Id.)  The

ALJ made this finding after considering evidence pursuant to 20 C.F.R. § 404.1529,[11] including

---

[10] The most common inborn error of metabolism, causing some drug-induced hemolytic anemias.  Dorland's Illustrated Medical Dictionary 801 (31st ed. 2007).  Lack of the G6PD enzyme causes red blood cells to break down prematurely when exposed to certain medications.  MedicineNet, G6PD Deficiency Causes, Symptoms, Diagnosis, and Treatment, http://www.medicinenet.com/g6pd_deficiency/article.htm (last visited Apr. 22, 2010).

[11] Factors relevant to symptoms, such as pain, which are considered include: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; (vi) measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

consideration of effectiveness and side effects of Plaintiff's medication regimen.  (R. at 19); see 20 C.F.R. § 404.1529(c)(3)(iv).

The ALJ noted that while Plaintiff's complaints of pain in her right shoulder, hands, knees, feet, and left hip are reflected in the record, the evidence did not support the conclusion that her pain or symptoms were as severe or limiting as alleged.  (R. at 20.)  Plaintiff described her shoulder pain as "off and on;" examinations revealed that she had no swelling or tenderness in her upper extremities; that her range of motion was good; and that her grip was 5/5 bilaterally.  (R. at 193, 199, 204, 399.)  Furthermore, x-rays showed her hip was normal, and that her lower extremity joints were normal and experienced no swelling.  (R. at 399, 441.)  Furthermore, the ALJ noted that Plaintiff had not required any inpatient hospitalizations or surgical procedures, and that the pain she experienced had been treated conservatively, primarily with medications.  (R. at 199, 247, 320, 371, 399, 442-43.)

The ALJ also noted that with respect to Plaintiff's complaints of pain regarding her pulmonary impairment, the record reflected that Plaintiff did not require inpatient hospitalizations and her symptoms responded to smoking cessation and medications.  (R. at 175, 179, 321, 325, 221.)  Moreover, despite any pain, the ALJ further noted that Plaintiff lived independently with her disabled son, prepared meals, performed housework, drove, shopped, interacted socially, baby-sat, worked with little children, managed her own finances, read, watched television, and continued smoking.  (R. at 44, 363, 397.)

A review of the evidence further supports the ALJ's findings.  Doctors had recommended that Plaintiff receive surgery; however, Plaintiff testified that she was waiting until springtime to address her knee issue(s) and that she would just "wait it out" with respect to her right shoulder.  (R. at 43.)  Furthermore, Plaintiff admitted that water aerobics and physical therapy helped her.

(R. at 42.)  The medical evidence also revealed that Plaintiff was prescribed, and given samples of, many medications, and was encouraged to diet, exercise, and quit smoking.  (R. at 238-39, 259, 272, 278, 280, 296, 301-06.)

The ALJ determined that in conjunction with Plaintiff's activities of daily living, Plaintiff retained the ability to stand, walk, and sit for prolonged periods throughout an eight hour day with appropriate breaks.  (R. at 21.)  The record additionally indicates that the ALJ, despite his credibility determinations, nevertheless gave deference to Plaintiff's subjective complaints of pain and medical history by finding that she was limited to "lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, [that] she can only climb, stoop, kneel, crouch, crawl, and work overhead with her right upper extremity on an occasional basis, ... and she should avoid concentrated exposure to pulmonary irritants such as dust, fumes, and odors."  (Id.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the medicinal side effects to her impairments was less than credible. Accordingly, the ALJ's conclusions regarding Plaintiff's credibility in regard to her complaints of pain are supported by substantial evidence and application of the correct legal standard.

C.      **Plaintiff contends that there is no evidence that Plaintiff can perform her past relevant work.**

Plaintiff contends that there is no evidence that Plaintiff can perform her past relevant work as a security monitor.  Specifically, Plaintiff argues that the ALJ chose to forgo VE testimony and thus Plaintiff's testimony was not sufficient to identify the demands of her past relevant work.  (Pl.'s Mem. at 6.)  However, Plaintiff also argues that, based on SSR 82-62, Plaintiff was the primary source for establishing why the demands of her past relevant work could not be met.  (Pl.'s Mem. at 6.)

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv).  The burden is still on Plaintiff at step four to prove that she is unable to perform her past relevant work.  Plaintiff must "show an inability to return to her previous work (*i.e.,* occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981)).  Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles ("DOT") as presumptively descriptive of a claimant's prior work.  Id.

The ALJ *may* use the services of a VE, or reference other services such as the DOT, in determining whether a Plaintiff can perform her past relevant work.  "Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of [her] past work."  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  Therefore, although the ALJ chose to forgo VE testimony, there can still be substantial evidence to support the finding that Plaintiff can perform her past relevant work.

Plaintiff correctly asserts that pursuant to SSR 82-62, the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level, exertional demands, and nonexertional demands of such work."  SSR 82-62.  Plaintiff testified that her security job required writing; handling paperwork, including daily and hourly reports; and controlling the surveillance monitors.  (R. at 48, 51, 157, 168.)  Plaintiff further testified that during her prior fifteen years of security work, different security jobs would require different activities, i.e., operating and watching security monitors, walking around shaking doorknobs, or driving a patrol vehicle for eight hours.  (R. at 36.)

However, Plaintiff provided a Work History Report and Disability Report that detailed the exertional and nonexertional requirements of her past work as a security officer.  (R. at 158, 169.)  On any given day, as a security officer, Plaintiff would walk for three and one half hours, stand for three hours, sit for two hours, and write, type, or handle small objects for one hour. She further identified that she would not be required to climb, stoop, kneel, crouch, crawl, reach, or handle, grab, or grasp big objects.  (Id.)  At the hearing before the ALJ, however, Plaintiff testified that she could only sit for twenty to thirty minutes, stand for fifteen to twenty minutes, and walk for fifteen to twenty minutes, and nothing in the record indicates whether Plaintiff had to complete each task continuously, rather than cumulatively throughout the day.  (R. at 39.)

The ALJ determined that Plaintiff had the RFC to perform light work, but that she could only occasionally climb, stoop, kneel, crouch, crawl, and work overhead with her right upper extremity.  (R. at 19.)  The ALJ further found that Plaintiff could "use her right hand for gross manipulation but only occasionally for fine manipulation" and that Plaintiff could use her right hand for fine manipulation for up to one-third of an eight hour work day.  (R. at 19, 351.)  In finding that Plaintiff was able to perform the work as actually performed, the ALJ met the requirements of SSR 82-62 by considering Plaintiff's statements regarding her past relevant work and the medical evidence that supported the finding that Plaintiff was capable of performing light work.  (R. at 22.)  Therefore, the ALJ's decision that Plaintiff could perform her past relevant work as a security officer is supported by substantial evidence.

Plaintiff additionally asserts that because SSA's psychologist determined Plaintiff to be markedly impaired in making plans and goals independently of others, and because it is unclear whether Plaintiff's past relevant work would include such tasks, remand is required.  (Pl.'s Mem. at 6.)

ALJs are not bound by the findings made by State Agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Thus, although the record contains medical evidence that Plaintiff is markedly limited in the ability to set realistic goals or plans independently of others, the record also contains medical evidence stating that Plaintiff can perform simple, routine, repetitive work in a stable environment; that she remains capable of understanding and remembering instructions and adapting to changing activities in the workplace; and that she could be expected to complete a normal workweek without exacerbation of psychological symptoms. (R. at 348-49.) Furthermore, there is no evidence that Plaintiff's past relevant work as a security monitor required setting goals or plans independently of others.

Plaintiff further asserts that because the ALJ determined that Plaintiff should avoid exposure to fumes, and because it is not clear whether Plaintiff's work environment would be fume free, remand is required. (Pl.'s Mem. at 6-7.) Plaintiff does not allege that she was unable to work because of fumes in the workplace. Rather, Plaintiff only asserts that she could not be a guard sitting for eight hours a day because she would be more focused on trying to breathe correctly, an issue addressed and resolved by the ALJ. (R. at 51-52.) Accordingly, the ALJ's determination that Plaintiff can perform her past relevant work is supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable

Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: April 22, 2010
Richmond, Virginia